UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **REBECCA ROWAN,** | Case No. 1:10 CV 1268 |
| Plaintiff, | Judge Patricia A. Gaughan |
| v. | REPORT AND RECOMMENDATION |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | Magistrate Judge James R. Knepp II |

Plaintiff Rebecca Rowan filed a Complaint (Doc. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny a period of disability and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

**Procedural Background**

Plaintiff filed for Supplemental Security Income (SSI) benefits on April 10, 2007 based on her anxiety and depression. (Tr. 10). The state agency denied the application initially and on reconsideration. (*Id.*). Plaintiff then filed a request for hearing on February 14, 2008 and Administrative Law Judge (ALJ) Edmund Round heard her case on October 2, 2009. (*Id.*). Plaintiff and a vocational expert (VE) testified at the hearing. (Tr. 22-52). In a decision dated November 2, 2009, the ALJ determined Plaintiff was not entitled to SSI benefits because her substance abuse was

a contributing factor material to her disability. (Tr. 10-21). In his opinion, the ALJ specifically found:

> If she stopped the substance use, Plaintiff would retain the following residual functioning capacity (RFC). She would have no exertional limitations. She would be limited to simple, routine, low-stress tasks that are not done in public. She would be limited to tasks that involve no interaction with the public and no more than limited and superficial interaction with co-workers and supervisors. She would be precluded from tasks that involve arbitration, negotiation, confrontation, directing the works of others, or being responsible for the safety of others.

(Tr. 16-17).

Plaintiff objected to the ALJ's decision and filed a Request for Review of the Hearing Decision on November 5, 2009. (Tr. 6). The Appeals Council declined jurisdiction on April 26, 2010, (Tr. 1-3), leaving the ALJ's decision as the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff sought judicial review pursuant to 42 U.S.C. § 1383(c). (Doc. 1).

**Factual Background**

*Vocational Background*

Plaintiff was born on December 15, 1985, making her 21 years old when she filed her SSI application. (Tr. 20). She completed high school and some college courses. (Tr. 122). She has no past relevant work despite having 22 jobs from 2003-2007. (Tr. 108-09, 116, 173). Plaintiff claims she performed "several jobs" since she filed for SSI benefits, but quit or was fired from those jobs after a short period. (Tr. 131).

*Medical Evidence*

From 2002 to 2006, Plaintiff obtained mental health treatment at Kaiser Permanente. (Tr. 213-406). Treatment notes documented diagnoses of bulimia nervosa, dysthymia, obsessive-compulsive disorder, obsessive-compulsive personality disorder, and mood disorder. (Tr. 213-406).

2

The medical records also reflect symptoms of anxiety (Tr. 227), trouble sleeping (Tr. 227), feeling overwhelmed (Tr. 234), and suicidal ideation (Tr. 213). Plaintiff also engaged in self-injurious behavior such as cutting, binging, and purging. (Tr. 213, 236). Plaintiff admitted to using marijuana and the treatment notes indicate that the substance abuse might have interfered with her medications. (Tr. 244-45). She also admitted to alcohol use and abuse. (Tr. 333).

In July 2006, Plaintiff was hospitalized for suicidal thoughts. (Tr. 176-79). Plaintiff reported she drank two to four times a week and smoked marijuana every day a few weeks prior to admission. (Tr. 176, 179). When discharged, Plaintiff's diagnoses included recurrent major depression, alcohol and marijuana abuse, and borderline personality disorder. (Tr. 177). The physician assigned her a Global Assessment of Functioning (GAF) score of 55.[1] (Tr. 178).

A few months later, Plaintiff was hospitalized again for suicidal ideation, complaints of depression, anxiety, feelings of frustration and hopelessness, and a reported lack of interest in activities, lack of self-esteem, anger, and irritability. (Tr. 193-94). Plaintiff told the attending physician she drank alcohol, smoked marijuana, and used other drugs. (Tr. 205). Her drug screen was positive for marijuana. (Tr. 193, 205). She reported going to Georgia and working until she lost her job because she was smoking marijuana. (Tr. 207). Her diagnoses included severe major depression, generalized anxiety disorder, and mixed substance abuse disorder. (Tr. 193).

In May 2007, Plaintiff received mental health assessments and treatment at Bridgeway, Inc. (Tr. 474). Plaintiff stated she was using alcohol three to four times a week, marijuana five times a

---

[1] A GAF score of 51-60 "indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 503 (6th Cir. 2006) (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (4th Ed., Text Rev. 2000)).

week, and cocaine daily. (Tr. 412). The psychiatrist, Dr. Roman, noted she was starting to doubt her previous diagnosis of bipolar disorder and suspected Plaintiff's mood instability related more to borderline cognitive behavioral patterns. (Tr. 428, 462). Plaintiff reported being out of her medications for two months due to insurance problems. (Tr. 409). She reported racing thoughts, burning herself, punching a window in anger, "flipping out" on someone at work, and drinking four to five drinks a day (in order to sleep). (Tr. 409). Plaintiff quit many jobs due to volatile mood and anger, absenteeism, and performance issues. (Tr. 410). Her diagnoses included recurrent depression, drug dependency, an eating disorder, and a borderline personality disorder. She received a GAF score of 48, which indicated serious problems.[2] (Tr. 417).

Plaintiff then sought treatment in December 2007 at Firelands Counseling and Recovery Services for depression and poly-substance abuse. (Tr. 498). She reported problems with depression, motivation, poor concentration, panic attacks, sleeping problems, impulsivity, and thoughts of suicide. (Tr. 511). Plaintiff also claimed she had a benzodiazepine addiction and the last time she used was December 2006. (Tr. 514). Plaintiff reported drinking alcohol about three times a week, three servings at a time, and smoking pot every day for the last five years. (Tr. 514). She also admitted to using cocaine for the previous two to three months. (*Id.*). Diagnoses included major depressive disorder, poly-substance dependence, borderline personality disorder, and a GAF score of 51. (Tr. 515).

In January 2008, Dr. Roman noted Plaintiff had no complaints of depression and her mood symptoms were well controlled. (Tr. 463). Plaintiff stated she had mostly refrained from using any

---

[2] A GAF score of 41-50 "indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Kornecky*, 167 F. App'x at 503.

substances and said she was feeling much better. (Tr. 500). Plaintiff said she no longer needed treatment and was oriented, hopeful, and future oriented. (*Id.*).

Plaintiff received treatment at the Center for Families and Children from May 2008 through May 2009. (Tr. 553-80). She reported a history of drug and alcohol abuse and claimed she had last used in March 2008. (Tr. 574). Plaintiff said she was doing fine a majority of the time, and worked at an art museum part-time. (Tr. 571, 574). However, some of the time she still did not want to leave the house and would hurt herself to get some relief. (Tr. 555, 562). Nurse Bartosik assigned a GAF score of 60. (Tr. 575).

Plaintiff received treatment on an emergency basis on September 6, 2008 for complaints of depression, anxiety, sadness, sleep difficulty, anger, hostility, and suicidal and homicidal thoughts. (Tr. 531). She reported being out of her medicine for three weeks. (Tr. 533). A few weeks later, she went to the emergency room again with complaints of needing a medication refill. (Tr. 520). Plaintiff was depressed, tearful, anxious, and agitated. (Tr. 522). Her diagnoses included depression and bipolar disorder. (Tr. 524). She had been unable to afford her medications. (Tr. 525).

In October 2008, Nurse Bartosik opined that Plaintiff had poor or no ability to use judgment, maintain attention, relate to others, function independently, socialize, behave in an emotionally stable manner, and relate predictably. (Tr. 517-18).

In March 2009, consultative psychologist Dr. Wax evaluated Plaintiff at the request of the state agency. (Tr. 544-52). Plaintiff told Dr. Wax she enrolled in some college courses and received "A" grades. (Tr. 544). Dr. Wax noted Plaintiff had been a drug abuser and currently was an alcohol abuser. (Tr. 547). Plaintiff lost her last job because she had started crying on the job and never went back. (Tr. 545). She had gotten into arguments with coworkers and supervisors in the past. (*Id.*).

Plaintiff reported a very good appetite but also discussed sleep problems, crying spells, difficulty with concentration, and panic attacks. (Tr. 546). Dr. Wax opined that although drinking might be contributing to Plaintiff's problems, the underlying cause was likely bipolar disorder. (Tr. 548). He assessed bipolar disorder, alcohol abuse, personality disorder, and a GAF score of 31. (Tr. 549). Dr. Wax concluded Plaintiff could not work. (*Id.*).

In May 2009, Nurse Bartosik opined that Plaintiff has poor or no ability to maintain attention, work near others with distracting them, cope with stress, complete a normal workday or week without disruptions from psychologically-based symptoms. (Tr. 578-79). Records until August 2009 indicate problems with her mood and anxiety. (Tr. 585).

*Hearing Testimony*

Plaintiff testified at the hearing in the presence of her counsel. (Tr. 27-44). Plaintiff testified she could obtain employment without much trouble, but her mood swings usually led her to quit or be fired. (Tr. 27-28, 34). She also stated she drinks four or five drinks four or five times per week. (Tr. 36). Plaintiff uses marijuana once every few weeks. (Tr. 37). In addition, although she purged and binged less frequently, it still was an issue. (Tr. 37). She still cuts and burns herself. (Tr. 38). However, Plaintiff can make simple dinners and perform household chores if reminded. (Tr. 41). She indicated she enrolled in summer classes but dropped out because there were things happening in her personal life. (Tr. 36).

VE Thomas Nimberger also testified at the hearing. (Tr. 44-49, 94). The ALJ asked the VE to consider a person with Plaintiff's background who: (a) had no exertional limitations; (b) could perform simple, routine, low stress tasks in non-public settings; (c) could have no interaction with the public and only superficial interaction with supervisors and coworkers; and (d) was precluded

from tasks involving arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others. (Tr. 45-46). The expert indicated this person could perform jobs such as night cleaner, assembler, and dishwasher. (Tr. 46-48). Upon examination by Plaintiff's counsel, the vocation expert also testified it would not be acceptable for an employee to miss three or four days a month because of a medical condition. Further, if an employee is likely to be off task 20% of the time, employment would be precluded. (Tr. 48-49).

## Standard of Review

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## Standard for Disability

Eligibility of SSI is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual function capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual function capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## Discussion

Plaintiff argues the ALJ's finding, that she is not entitled to benefits because her drug and alcohol abuse (DAA) materially contributes to her disability, is not supported by substantial

evidence. For the following reasons, the undersigned finds that substantial evidence supports the ALJ's ruling that drug and alcohol abuse constitutes a material contributing factor and therefore Plaintiff is not entitled to benefits.

An individual cannot receive disability benefits under 42 U.S.C. § 423 if alcoholism or drug addiction would be a "contributing factor material" to the disability analysis. 42 U.S.C. § 423(d)(2)(C); 42 U.S.C. § 1382c(a)(3)(J). In making the disability determination, the ALJ must consider all evidence in the case record and develop a complete medical history of at least the preceding twelve months. 42 U.S.C. § 423(d)(5)(B). The key factor to examine in determining whether DAA is a material contributing factor is whether the individual would qualify as disabled if the DAA ceased. 20 C.F.R. § 404.1535(b)(1). If the remaining limitations would not be disabling, then the DAA is a contributing factor and the individual will not receive SSI benefits. *Id.* § 404.1535(b)(2)(i). In making the determination, the ALJ must evaluate the individual's current physical and mental limitations. Then the ALJ must determine whether those limitations would exist without DAA. *Id.* § 404.1535(b)(2).

Plaintiff argues the evidence in the record is an insubstantial basis for determining with any degree of certainty whether the DAA is a contributing material factor. In support, Plaintiff cites a Social Security Administration Teletype, No. EM-96200 (Aug. 30, 1996), *available at* https://secure.ssa.gov/apps10/public/reference.nsf/links/04292003041931PM.[3] She cites Question 27 from that teletype as grounds for overturning the ALJ's DAA and RFC determinations. Question 27 pertains to situations in which an ALJ cannot separate the DAA effects to project accurately what limitations would remain if the DAA stopped. The answer indicates that if an ALJ could not project

---
[3] The Court also notes internal agency procedural guidelines are generally not binding on the Court, but may be considered. *See, e.g., Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008).

what limitations would remain after the abuse ceased, the DAA is not material. *Id*. However, an ALJ needs only substantial evidence to support his findings to avoid remand. *Walters*, 127 F.3d at 528. Here, there is sufficient evidence in the record to indicate Plaintiff's DAA is a material component of her impairments.  As the ALJ noted, during periods of sobriety, Plaintiff showed marked improvement. (*See* Tr. 15, 18, 19, 463, 500, 575). For example, treatment notes from Firelands Counseling on February 20, 2008 state: "[Plaintiff] mostly refrained from using any substances and stated that she's feeling much better." (Tr. 500). Taking the record as a whole and looking at patterns of behavior during sober periods, there is substantial evidence – evidence that a "reasonable mind might accept as adequate" – to support the ALJ's conclusion. *Besaw*, 966 F.2d at 1030.

Moreover, as the DAA analysis pertains to steps two, three, and four of the disability analysis, Plaintiff bears the burden of proving the "existence and severity of limitations caused by her impairments", *Jones*, 336 F.3d at 474, and therefore must demonstrate her impairments would persist without the DAA. *Trent v. Astrue,* 2011 WL 841538, *3 (N.D. Ohio, 2011) (*citing Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002); *Underwood v. Comm'r of Soc. Sec.*, 2010 WL 424970, *6 (N.D. Ohio 2010) (*citing Brown v Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). Plaintiff offers little evidence from the record to support her claim that she is disabled without the DAA. Plaintiff has failed to carry her burden of proof, and as discussed below, the ALJ had substantial evidence to support his conclusion.

Plaintiff argues the ALJ improperly substituted his opinion for that of Plaintiff's doctors because the ALJ failed to account properly for the opinions of Dr. Wax and Nurse Bartosik. In deciding whether the DAA is material and the effect it has on the RFC, the ALJ may not substitute his opinion for that of a physician. *Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 157 (6th Cir.

2009); *see also* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). However, an ALJ is not required to recite verbatim the medical opinion of a physician in his RFC analysis. *Poe*, 342 F. App'x at 157. Assessing and balancing medical and non-medical evidence before an RFC finding does not constitute impropriety on behalf of the ALJ. *Id.* Plaintiff argues the ALJ ignored the opinions of Dr. Wax and Nurse Bartosik in his RFC determination. The ALJ's decision indicates he considered both. (Tr. 15). The ALJ appropriately indicated that Dr. Wax's diagnoses did not examine Plaintiff's limitations in the absence of DAA. (Tr. 18). Although Dr. Wax noted Plaintiff's DAA, he determined the underlying cause was likely bipolar disorder, with DAA contributing to its severity. (Tr. 548). However, Dr. Wax makes no mention of plaintiff's bipolar disorder without the DAA and no mention of whether it would be disabling for purposes of SSI benefits. Therefore, Dr. Wax's opinions were helpful in the initial determination of disability but not probative when determining Plaintiff's disability status without her DAA. (Tr. 18).

The ALJ also considered Nurse Bartosik's notes despite the fact that a nurse is not an "acceptable medical source" who can establish a medical impairment. 20 C.F.R. § 416.913(a)(d)(1). The ALJ was therefore not required to accept Nurse Bartosik's conclusions on Plaintiff's mental capacity. The ALJ suggests Nurse Bartosik's opinions and notes appear contradictory. (Tr. 15, 18). However, the GAF score of 60 (Tr. 575) and Nurse Bartosik's opinions about Plaintiff's ability to work with others (Tr. 517-18) were made a year apart. Holding these findings inconsistent ignores the character of Plaintiff's mental illnesses because her symptoms frequently change. Nurse Bartosik's notes simply indicate the dynamic nature of Plaintiff's symptoms. Nonetheless, Nurse Bartosik's findings demonstrate Plaintiff's control over her problems when Plaintiff is sober. When Nurse Bartosik assigned the GAF score of 60, Plaintiff was not abusing substances and held a part-

time job. (Tr. 574-75). Thus, the ALJ's DAA determination finds support in Nurse Bartosik's notes.

The ALJ focused on Plaintiff's functioning during periods of sobriety – "although the record contains only brief period of sobriety…there is evidence of improvement in [Plaintiff's] symptoms during those periods." (Tr. 18). For example, Plaintiff visited Dr. Roman in January 2008 with no complaints of depression, feeling future-oriented, having "mostly refrained" from using substances. (Tr. 463, 500). The ALJ examined and assessed the whole of the record in coming to his RFC determination, did not substitute his opinion for that of a physician, and properly considered the opinions of Dr. Wax and Nurse Bartosik.

Additionally, a mere diagnosis of physical or mental impairment, such as Dr. Wax's diagnosis of bipolar disorder, does not equate with disability for the purposes of SSI benefits. *Foster v. Bowen*, 853 F.2d 483, 488 (6th Cir. 1988). In *Foster*, the treating physician diagnosed the plaintiff as having dysthymic disorder. However, the doctor never described the claimant as disabled. He described the claimant as "well-oriented for time, place, and person," and as having "good judgment and insight into her problems." *Id.* The physician's findings indicated that although plaintiff may have suffered from a depressive disorder, her condition did not qualify as disabling. *Id.* The facts of *Foster* are similar to the instant case. The record indicates Plaintiff has a mental disorder – but it does not indicate Plaintiff's disorder is disabling. Thus, although Dr. Wax diagnosed Plaintiff with bipolar disorder, that diagnosis alone does not equate to diability. Simply because the record contains diagnoses of mental problems does not mean Plaintiff is entitled to SSI benefits. In fact, the ALJ evaluated and accounted for Plaintiff's mental restrictions in his RFC analysis. (Tr. 16-17) (limiting Plaintiff to jobs requiring little interaction with others and involving relatively low stress).

12

Plaintiff also argues that the ALJ should have developed the record more fully to include testimony by a medical expert on the likely effects of stopping DAA. An ALJ has discretion to determine whether further evidence, such as expert testimony, is necessary to come to a decision. 20 C.F.R. §§ 404.1517, 416.917; *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); *see generally, Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). As noted above, the ALJ had substantial record evidence to support his materiality finding. As such, it was not necessary to call a medical expert.

### Conclusion and Recommendation

After reviewing the arguments presented, the record, and applicable law, the undersigned finds the Commissioner's decision denying SSI benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

s/James R. Knepp II

United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).